# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | §   Case Number: 4:15-CR-134-003 |
| v. | §   Judge Mazzant |
| | § |
| JACK SHAW | § |

### MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant's Motion for Compassionate Release (Dkt. #228). The Court, having considered the Motion, the response, the record, and the applicable law, finds that the motion must be **DENIED**.

## I. BACKGROUND

In December of 2014, Defendant Jack Arnold Shaw ("Shaw") was sentenced for violating several Arkansas state criminal laws. Relevant herein, Shaw was sentenced by the Pulaski County Circuit Court of Arkansas to 72 months' confinement for Possession of Meth/Cocaine With Purpose to Deliver, 72 months' confinement for Delivery of Methamphetamine or Cocaine, and 72 months' conferment for Failure to Appear. Shaw was also sentenced by the Grant County Circuit Court of Arkansas to 36 months' confinement and 72 months' suspended for Possession of a Schedule IV Controlled Substance With Purpose to Deliver. Shaw's various state charges were to be served concurrently. Shaw began serving his Arkansas state sentences for these charges on December 19, 2014.

On January 27, 2017, Shaw appeared before the undersigned Court and pleaded guilty to Conspiracy to Possess with the Intent to Distribute and Distribution of 500 Grams or More of Methamphetamine, 5 Kilograms or More of Cocaine, and 1 Kilogram or More of Heroin, a violation of 21 U.S.C. § 841(b)(1)(A). On May 2, 2017, the Court sentenced Shaw to 144

months' imprisonment. The Court ruled that Shaw would receive credit on his federal sentence for the time served for the Arkansas state charges discussed above. He was credited for time-served from December 19, 2014 through December 11, 2015, consequently reducing his federal sentence from 144 months to 132 months. The Court further ruled that Shaw's federal sentence was to be served concurrently with any undischarged sentences on his Arkansas state charges related to possession and delivery of methamphetamine/cocaine, and consecutively to any undischarged term of imprisonment on his Arkansas state charge for failure-to-appear.

On August 8, 2017, Shaw was released from Arkansas state custody. On August 7, 2019, Shaw entered into federal custody and began serving his federal sentence. Shaw is serving his federal sentence as FCI Forrest City Low. *See* https://www.bop.gov/inmateloc/ (Register Number: 18677-009). The time remaining on his federal sentence is 94 months. The Bureau of Prisons ("BOP") projects he will be released on December 26, 2028.

On October 6, 2021, Shaw moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), based on the calculation of his sentence and family circumstances, arguing they constitute "extraordinary and compelling reasons" to grant a sentence reduction (Dkt. #228). On November 10, 2021, the Government filed a response (Dkt. #232). The Government opposes the sentence reduction, arguing Shaw has not demonstrated "extraordinary and compelling reasons" and a sentence reduction is unwarranted based on the § 3553(a) factors (Dkt. #232). On December 22, 2021, Shaw filed a reply (Dkt. #235). Shaw filed supplements to his reply on January 18, 2022 (Dkt. #236), and March 16, 2022 (Dkt. #237).

## II. LEGAL STANDARD

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v.*

*United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction if it finds: (1) a defendant "fully exhausted all administrative rights"; (2) "extraordinary and compelling reasons warrant such a reduction"; (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (4) such a reduction is appropriate "after considering the factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act of 2018 made the first major changes to compassionate release since its authorization in 1984. Pub. L. 115-391, 132 Stat. 5194. Procedurally, the First Step Act removed the Director of the BOP as the sole arbiter of compassionate release. Instead, the law enabled a defendant to move for compassionate release directly in district court after exhausting their administrative rights. 18 U.S.C. § 3582(c)(1)(A). Prior to this change, the BOP retained sole gatekeeping authority over compassionate release petitions. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020). This resulted in underuse and mismanagement.[1] *Id.* Through the First Step Act, Congress sought to mitigate this by "increasing the use and transparency of compassionate release" Pub. L. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

Substantively, the First Step Act also modified the "extraordinary and compelling reasons" determination. Congress never defined what constitutes "extraordinary and

---

[1] In 2013, a report from the Office of the Inspector General revealed that the BOP granted compassionate release to only an average of 24 incarcerated people per year. *See* U.S. Dep't of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (last visited April 14, 2020). And of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13% died awaiting a final decision by the BOP Director. *Id.*; *see also Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. L. REV. 850, 868 (2009) (noting that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

compelling," but rather delegated this determination to the Sentencing Commission.[2] By the text of § 3582(c)(1)(A), any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." However, since passage of the First Step Act, the Sentencing Commission has not updated its guidelines on compassionate release.[3] This has created significant disagreement across the country whether the pre-First Step Act policy statement is still "applicable," and thus binding on district courts.

The Fifth Circuit joined the Second, Fourth, Sixth, Seventh, and Tenth Circuits in concluding that § 1B1.13 is no longer binding on a district court. *See United States v. Shkambi*, 2021 WL 1291609, at *4 (5th Cir. 2021) ("The district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a). In reaching this conclusion, we align with every circuit court to have addressed the issue."). Under this new framework, § 1B1.13 still binds district courts on motions made by the BOP, but, for motions made directly by an inmate, district courts are free to consider any relevant fact in determining if "extraordinary and compelling reasons" exist. *See Brooker*, 976 F.3d at 235–36 (because the First Step Act allows both inmates and the BOP to file compassionate-release motions under § 3582(c)(1)(A), § 1B1.13 now applies only when such motions are made by the BOP and is inapplicable when a compassionate-release motion is made by a defendant); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) ("A sentence reduction brought about by motion of a defendant, rather than the BOP, is not a reduction 'under this policy statement.'"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with *Brooker* and holding that there is no

---

[2] In 28 U.S.C. § 994(a)(2), Congress granted the Commission broad authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2)]." And in 28 U.S.C. § 994(t), "Congress instructed the Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (quoting 28 U.S.C. § 994(t)).

[3] The Sentencing Commission currently lacks a quorum to issue new guidelines.

"applicable" policy statement for § 3582(c)(1)(A) motions after the First Step Act); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release.").

Despite this newfound discretion, district courts are not without guidance in determining whether "extraordinary and compelling reasons" exist. First, Congress has explicitly limited that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason. 28 U.S.C. § 994(t) (emphasis added)." Second, the Sentencing Commission's policy statement and commentary is still persuasive. *United States v. Logan*, No. 97-CR-0099(3), 2021 WL 1221481 (D. Minn., Apr. 1, 2021) (finding that § 1B1.13's definition of "extraordinary and compelling" should be afforded "substantial deference . . . as such deference is consistent with the intent (even if not mandated by the letter) of § 3582(c)(1)(A)"). Application Note 1 of the policy statement provides that "extraordinary and compelling reasons" exist when: (1) a terminal illness or other medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; (2) a defendant, who is at least 65 years old, "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment"; and (3) a defendant has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver. U.S.S.G. § 1B1.13, n.1(A)-(C). Lastly, BOP Program Statement 5050.50 ("PS 5050.50"), amended after passage of the First Step Act, describes the factors BOP considers grounds for compassionate release. *See* PS 5050.50 ¶¶ 3–6. These grounds are similar to the reasons identified by the Sentencing Commission, but also include a list of factors like rehabilitation and circumstances of the

offense.[4] *Id.*

Building from this guidance, district courts across the country have identified additional situations where "extraordinary and compelling reasons" exist. First, while rehabilitation alone is not an "extraordinary and compelling" reason for a sentence reduction, it can be a significant factor warranting a sentence reduction when an inmate has an otherwise qualifying condition.[5] *See United States v. Rodriguez*, 451 F.Supp.3d 392, 405 (E.D. Pa. 2020) (noting that the Sentencing Commission itself interpreted § 3582(c)(1)(A) as allowing consideration of an inmate's rehabilitation). If an inmate demonstrates a long, comprehensive record of rehabilitation, it goes to whether injustice would result if they remain incarcerated. *See Brooker*, 976 F.3d at 238 (identifying "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction). Second, courts consider any changes in law and the sentencing guidelines when determining if a sentence is extraordinary. For example, courts grant compassionate release at a remarkable rate for inmates subject to the now abolished § 924(c) sentence-stacking. *See McCoy*, 981 F.3d at 285 ("As the court observed in *Bryant*, multiple district courts have concluded that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)"). Though Congress did not retroactively eliminate § 924(c) sentence-stacking, courts consider whether the

---

[4] PS 5050.50's nonexclusive factors are: "the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting PS 5050.50 ¶ 7).

[5] 18 U.S.C. § 3142(g) aids the Court in determining whether a defendant is a danger to the community. Applicable factors include: "the nature and circumstances of the offense," "the person's character, physical and mental condition, family ties, employment, . . . criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

outdated policy warrants relief on a case-by-case basis.[6]

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .
>
> (5) any pertinent [Sentencing Commission] policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

### III. DISCUSSION

Shaw moves for compassionate release based on the calculation of his sentence and family circumstances. Shaw argues these circumstances are sufficient to constitute

---

[6] *See* Shon Hopwood, *Second Looks & Second Chances*, 41 CARDOZO L. REV. 83, 123-24 (2019) (arguing Congress did not make § 924(c) sentence stacking retroactive because it did not want to make all inmates "*categorically*" eligible for sentencing relief, but Congress meant for relief from draconian sentences to apply "*individually*")

"extraordinary and compelling reasons" and warrant a sentence reduction. The Government argues Shaw's conditions are not severe enough to qualify for compassionate release.

Although Shaw has met § 3582(c)(1)(A)'s exhaustion requirement, he has not met the statute's requirement that "extraordinary and compelling reasons" exist warranting a reduction of his sentence. Shaw's motion, therefore, must be denied.

### A. Shaw Has Met § 3582(c)(1)(A)'s Exhaustion Requirement.

Shaw's compassionate release motion may only be considered if he first meets § 3582(c)(1)(A)'s exhaustion requirement. Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Fully exhausting administrative remedies requires a denial by the warden of a defendant's facility or the passing of thirty days after the warden's receipt of a defendant's request, whichever is earlier.[7] *Id.*

Section 3582(c)(1)(A)'s exhaustion requirement is not waivable. *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . ."); *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020). If a defendant has not sought relief from the BOP, or has not waited thirty days since seeking relief, the Court may not consider their motion.

On July 15, 2021, Shaw submitted a request to the warden at FCI Forrest City Low to grant him compassionate release (Dkt. #228, Exhibit 1). The warden denied his request. On

---

[7] BOP regulations define "warden" to include "the chief executive officer of . . . any federal penal or correctional institution or facility." 28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United States v. Campagna*, 16 Cr. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by the Residential Re-entry Manager suffices to exhaust his administrative rights").

October 6, 2021, Shaw filed a motion with this Court seeking a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A). Because the warden denied Shaw's request before Shaw filed the present motion, Shaw has met § 3582(c)(1)(A)'s exhaustion requirement.

**B. Shaw Has Not Met § 3582(c)(1)(A)'s Requirement that "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction.**

Shaw's compassionate release motion turns on his assertions that (1) the time he spent in state penitentiary for related offenses was not properly factored into the calculation of his federal sentence; and (2) that his disabled sister's needs for care constitute extraordinary and compelling reasons to reduce his sentence. However, Shaw's assertions do not justify compassionate release because the time Shaw served for relevant state charges was factored into his federal sentence and because Shaw's circumstances do not constitute an "extraordinary and compelling reason[]" under § 3582(c)(1)(A)(i).

The Court has discretion to decide whether Shaw's conditions present "extraordinary and compelling reasons" warranting a sentence reduction. *See Shkambi*, 2021 WL 1291609, at *4. The Court is not bound by the Sentencing Commission's policy statement and may consider any relevant facts in evaluating Shaw's condition of incarceration. *Id.* Typically, courts consider whether a defendant suffers from a serious health condition, has a record of rehabilitation, the nature and circumstances of the defendant's offense, and whether a sentence is based on outdated law. *See Brooker*, 976 F.3d at 238.

**1. Sentencing Credit Error**

First, Shaw claims that his time-served credit for his related state offenses was incorrectly calculated as-applied to his federal sentence. The BOP is responsible for "determin[ing] what credit, if any, will be awarded to prisoners for time spent in custody prior to the commencement of their federal sentences." *Leal v. Tombone*, 341 F.3d 427, 428 (5th Cir. 2002) (citing *United*

*States v. Wilson*, 503 U.S. 329, 331–32 (1992)). Pursuant to the BOP's recommendation, the Court sentenced Shaw to 144 months' imprisonment for his federal crimes. Shaw was then given credit for time-served between December 19, 2014, and December 11, 2015—representing the dates he was sentenced to Arkansas state prison for the related Arkansas state drug charges until the date he entered into federal custody. After receiving credit for time-served on his related Arkansas state charges, his federal sentence was reduced to 132 months' imprisonment (Dkt. #232).

After reviewing the present motion, the Court consulted with the BOP. The BOP represents that Shaw's federal sentence was, in fact, miscalculated, and he should have been given time-served credit from December 19, 2014, through May 1, 2017—representing the dates he was sentenced to Arkansas state prison until the day before the date of his federal sentencing. However, this Court lacks jurisdiction to correct any miscalculation in Shaw's time-served credit. First, the proper procedural vehicle for such a request is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *United States v. Baker*, 134 F. App'x 671, 671–72 (5th Cir. 2005) (recognizing that errors in sentencing credit calculations do not constitute clerical errors that may be corrected under Federal Rule of Criminal Procedure 36, but rather must be raised through § 2241 which addresses errors affecting substantive rights); *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (stating a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the appropriate vehicle in which "a sentenced prisoner attacks . . . the prison authorities' determination of its duration.") (citations omitted); *United States v. Rodriguez-Falcon*, 710 F. App'x 242, 243 (5th Cir. 2018). Second, a challenge to the BOP's calculation of sentencing credit pursuant to 28 U.S.C. § 2241 must be filed in the district where the defendant is presently incarcerated. *See Pack*, 218 F.3d at 451; *United States v. Garcia-Gutierrez*, 835 F.2d 585, 586

(5th Cir. 1998) ("Since Gutierrez is not confined within the Western District of Texas the court *à quo* has no habeas jurisdiction."). Such a petition may not be filed until the petitioner has exhausted his administrative remedies to seek correction of the error through the BOP. *United States v. Aparicio*, 963 F.3d 470, 478 (5th Cir. 2020), *cert. denied sub nom.*, 141 S.Ct. 435 (2020); *Smith v. Thompson*, 937 F.2d 217, 219 (5th Cir. 1991) (stating an agency should be given an opportunity to correct its own error before aggrieved party seeks judicial intervention).

For these reasons, to the extent Shaw's time-served credit was incorrectly calculated by the BOP, this Court is not the proper forum with jurisdiction to address the issue, nor is Shaw's motion for compassionate release the proper vehicle to have such an error corrected.

**2. Other Extraordinary and Compelling Circumstances**

Next, when considering family circumstances sufficient to grant sentence reduction, the United States Sentencing Guidelines state that reduction should only be granted after the "death or incapacitation of the caregiver of the defendant's minor child or minor children. . . . The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, n.1(C). While this language has been expanded in some courts within this Circuit to encompass instances when the parents of a defendant can no longer care for themselves, requests to expand statutory coverage to care for disabled siblings have previously been denied. *See United States v. Nevers*, No. CR 16-88, 2020 WL 3077034, at *6 (E.D. La. June 10, 2020). Shaw's request is akin to the latter.

Further, for a defendant to be granted compassionate release based on the need to care for a family member, there must be no other potential family member who could provide the needed care. *See United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19,

2020). Here, Shaw has not shown that he has a minor child or spouse to whom only he can provide the requisite care. Moreover, Shaw's reply indicates there are other family members besides Shaw that could provide the care needed to his mother and sister (Dkt. #263, Exhibit 1). Thus, while the Court recognizes the needs of Shaw's sister and the status of Shaw's mother, the limited exceptions allowing for sentence reduction based on family circumstances are not applicable in this case.

Weighing the evidence, Shaw has not shown that his incarceration is "extraordinary and compelling" under § 3582(c)(1)(A)(i)'s framework. *See United States v. Stowe*, No. CR H-11-803(2), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstances meeting the test for compassionate release").

\* \* \*

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Because Shaw has failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), his Motion must be denied.[8]

### IV. CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Compassionate Release

---

[8] In the alternative, the Court is also unable to order home confinement. The BOP has exclusive authority to determine where a prisoner is housed; thus, the Court is without authority to order home confinement. 18 U.S.C. § 3621(b); *see also United States v. Miller*, No. 2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

-13-

(Dkt. #228) is **DENIED**.

  **IT IS SO ORDERED.**

  **SIGNED this 6th day of September, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE