# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Case No. 4:15-CR-134-03 |
| | § | Judge Mazzant |
| | § | |
| JACK SHAW | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant Jack Shaw's Renewed Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. #250). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**. Also before the Court is Defendant's Motion to Seal Exhibit 4, Attachments 1 and 2 (Dkt. #250-5; Dkt. #250-6) Filed with Renewed Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. #249). The Court finds that the Motion to Seal should be **GRANTED**.

## BACKGROUND

In December of 2014, Defendant Jack Arnold Shaw was sentenced for violating several Arkansas state criminal laws. As relevant here, Defendant was sentenced by the Pulaski County Circuit Court of Arkansas to 72 months of confinement for Possession of Meth/Cocaine with Purpose to Deliver, 72 months of confinement for Delivery of Methamphetamine or Cocaine, and 72 months of conferment for Failure to Appear (Dkt. #250-1). Defendant was also sentenced by the Grant County Circuit Court of Arkansas to 36 months of confinement and a 72 month suspended sentence for Possession of a Schedule IV Controlled Substance with Purpose to Deliver (Dkt. #250-1). Defendant's various state charges were to be served concurrently. Defendant began serving his Arkansas state sentences for these charges on December 19, 2014 (Dkt. #238 at p. 1).

On January 27, 2017, Defendant pleaded guilty to Conspiracy to Possess with the Intent to Distribute and Distribution of 500 Grams or More of Methamphetamine, 5 Kilograms or More of Cocaine, and 1 Kilogram or More of Heroin, a violation of 21 U.S.C. § 841(b)(1)(A) (Dkt. #238 at p. 1). On May 2, 2017, the Court sentenced Defendant to 144 months of imprisonment (Dkt. #238 at p. 2). The Court ruled that Defendant would receive credit on his federal sentence for the time served for the Arkansas state charges discussed above, excluding the Failure to Appear conviction (Dkt. #181; Dkt. #250-2). He was credited for time-served from December 19, 2014, through December 11, 2015, which reduced his federal sentence from 144 months to 132 months (Dkt. #238 at p. 2). The Court further ruled that Defendant's federal sentence was to be served concurrently with any undischarged sentences on his Arkansas state charges related to possession and delivery of methamphetamine/cocaine, and consecutively to any undischarged term of imprisonment on his Arkansas state charge for failure-to-appear (Dkt. #238 at p. 2). On August 8, 2017, Defendant was released from Arkansas state custody. Two years later, on August 7, 2019, Defendant entered into federal custody and began serving his federal sentence (Dkt. #238 at p. 2).

On October 6, 2021, Shaw moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. #228). On November 10, 2021, the Government filed a response (Dkt. #232). The Court denied that motion on November 6, 2022 (Dkt. #238). On October 8, 2024, Defendant filed this Renewed Motion for Sentence Reduction based on the calculation of his sentence and family circumstances, arguing they constitute "extraordinary and compelling reasons" to grant a sentence reduction (Dkt. #250). The Government has not responded and the Motion is ripe for adjudication.

## LEGAL STANDARD

**I.**     **18 U.S.C. § 3582(c)(1)(A)**

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)     extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons]" *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the

---

[1]  This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

## II.    Exhaustion of Administrative Remedies

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory . . . we must enforce this procedural rule"). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional

---

[2]    The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (cleaned up); *see also Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (cleaned up and citations omitted) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III.    U.S.S.G.'s Policy Statement

### A.    Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient.

*See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 291–92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of

serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also*

---

[3]    *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

*Koons*, 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling" reason for compassionate release.

### B.    Defendant's age (U.S.S.G. § 1B1.13(b)(2))

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental

---

[4]  *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meetingof-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid19)-pandemic [https://perma.cc/MR64-X7UV].

[5]  End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6]  *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7]  *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

### C.    Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A)    The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of selfcare because of a mental or physical disability or a medical condition.

(B)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C)    The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D)    The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "***immediate family member***" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant. U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-

CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F.Supp.3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Id.* The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### D.    Victim of abuse (U.S.S.G. § 1B1.13(b)(4))

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. § 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* §1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative

proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

### E.    Other reasons (U.S.S.G. § 1B1.13(b)(5))

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

### F.    Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV.    The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V.    The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the

requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022)).

## ANALYSIS

Defendant moves for compassionate release arguing that a sentencing error and his family circumstances are sufficient to constitute "extraordinary and compelling reasons" and warrant a sentence reduction. Additionally, Defendant argues that the § 3553(a) factors do not outweigh these "extraordinary and compelling reasons." The Court has examined the facts and considered the arguments. Defendant has met § 3582(c)(1)(A)'s exhaustion requirement. Additionally, the Court finds that he has met the statute's requirement that "extraordinary and compelling reasons" exist warranting a reduction of his sentence and his Motion should be granted.

## I. Defendant satisfies § 3582(c)(1)(A)'s exhaustion requirement.

As a threshold matter, the Court first addresses the exhaustion requirement. As outlined in § 3582(c)(1)(A), "before seeking relief from the [C]ourt, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)).

---

[8]  18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

Here, Defendant has exhausted his administrative remedies by submitting a formal request to his warden with a letter dated July 15, 2021 (Dkt. #250 at p. 13). The warden denied this request on July 27, 2021 (Dkt. #250 at p. 13). Additionally, Defendant submitted a request for a sentence reduction under 18 USC § 3582(c)(1)(A) by a letter dated April 23, 2023 (Dkt. #250-15). Through it, Defendant requested compassionate release due to the incapacitation of an immediate family for whom he is the only available caretaker (Dkt. #250-15). Defendant did not receive a response and more than thirty days passed before he filed his Motion (Dkt. #250 at p. 13). Thus, the Court finds that Defendant has fulfilled the initial requirement of exhausting administrative remedies.

## II.    "Extraordinary and compelling" reasons warrant a sentence reduction.

To show that "extraordinary and compelling" reasons warrant a sentence reduction, the Court examines whether the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13. Defendant's request for compassionate release falls under U.S.S.G. §§ 1B1.13(b)(3) and (5). Defendant makes two arguments in support of his motion for compassionate release: (1) the incapacitation of his sister is "extraordinary and compelling" because he is the only available caregiver, which satisfies the family circumstances standards in § 1B1.13(b)(3), and (2) errors in calculating Defendant's sentence caused him hardships and constitute an extraordinary and compelling reason under § 1B1.13(b)(5) (Dkt. #250). Ultimately, the Court finds that Defendant's family circumstances are an "extraordinary and compelling" reason warranting a sentence reduction, especially when considering Defendant's rehabilitation and the other facts surrounding Defendant's incarceration.

### A.    Family Circumstances

Under U.S.S.G. § 1B1.13(b)(3), the Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling

15

reason for release. Defendant argues that he establishes circumstances similar to those listed in paragraphs (3)(A) through (3)(C) involving an immediate family member, when the defendant is the only available caregiver for such family member. U.S.S.G. § 1B1.13(b)(3)(D) defines immediate family member to include sibling. Defendant argues his sister, Tracy Shaw, meets the standard of incapacitation (Dkt. #250 at p. 21). Additionally, Defendant offers specific facts to argue he is the only available caregiver (Dkt #250-4; Dkt #250-5; Dkt #250-6; Dkt #250-8).

### 1.     Standard of Incapacitation Required

"One is incapacitated, whether due to injury or illness, when he is 'deprive[d] of capacity or natural power,' such that he is unable to provide self-care." *See Zermeno*, 2024 WL 4043445, at *4 (internal citations omitted). Defendant's sister is 54, has Down Syndrome and congenital heart defects, suffers from curvature of the spine, is only able to move with a walker, cannot speak, and is functionally blind (Dkt. #250 at pp. 5–11; Dkt. #250-4 at pp. 2-3). The Arkansas Department of Human Services performed an individual assessment of Tracy's capabilities and confirms regarding the individualized care Tracy requires (Dkt. #250-5). The assessment supports Defendant's claims that Tracy needs assistance with eating, dressing herself, bathing, and all of her other daily activities (Dkt. #250 at pp. 5–6; Dkt. #250-5). Further, due to Tracy's vision problems and spine curvature, she must be lifted and lowered into the bathtub. (Dkt. #250 at pp. 5–6; Dkt. #250-4 at pp. 2-3). Accordingly, the Court finds that Tracy meets the *Zermeno* definition of incapacitation.

### 2.     The Need for a Caretaker

Defendant argues that his mother, due to her age and physical decline, is physically incapable of caring for Tracy (Dkt. #250 at p. 20). Additionally, Defendant argues that no other family member can provide care for Tracy (Dkt. #250 at pp. 22–23). The Court agrees with

16

Defendant that there are no other family members who can assist in providing his sister with the care that she needs.

Conclusory statements that the defendant must now serve as a family member's caretaker are insufficient. *See Newman*, 2024 WL 812041, at *2; *also see United States v. Wrice*, No. 10-CR-40065-JPG-1, 2023 WL 4030067 (S.D. Ill. June 15, 2023) (holding that the defendant had not met her burden where she "provided no statements from other family members, no affidavits or letters from medical professionals, and no other verifiable evidence to show that she is the only caretaker available"). Here, Defendant has met his burden by submitting a declaration from his mother, Delola Shaw, her medical records, and a declaration from his mother's grandson, Tommy Lawrence (Dkt. #250-4; Dkt. #250-5; Dkt. #250-6; Dkt. #250-8).

In Delola Shaw's declaration she states that she is eighty-two-years-old, has Type II Diabetes, requires a walker for mobility, is unable to lift objects above five pounds, and is now unable to care for Tracy's needs (Dkt. #250-4). Medical records indicate that Delola is unable to use her legs without the assistance of a walker. (Dkt. #250 at pp. 6–7; Dkt. #250-6). Additionally, the medical records indicate she has Type II diabetes, high blood pressure, and is categorized at a high risk of falling (*See* Dkt. #250 at pp. 6–7; Dkt. #250-6). The Court finds that the medical records confirm Delola assessment of her own physical ability, making her incapable of providing necessary care for Tracy.

Additionally, the following information from declaration sets out to explain the inability of other family members to care for Tracy (Dkt. #250-4). Delola's husband and two brothers in laws have passed away (Dkt. #250-4 at p. 3). Sarah Lawrence, Delola's 36-year-old granddaughter, lost custody of two children due to heroin addiction and has recently relapsed, making her unavailable

as a caregiver (Dkt. #250-4). Tommy Lawrence frequently travels to Asia for work for extensive periods of time, is unable to move close to Tracy due to his work, and is unavailable for consistently provide Tracy with the physical assistance she needs (Dkt. #250-4). Scott Campbell, Delola's nephew, lives in Virginia, and his whereabouts are unknown (Dkt. #250-4). John Campbell, Delola's nephew, lives in North Little Rock with liver disease and is an invalid, limiting his ability to provide care (Dkt. #250-4). Donna Clark, Delola's niece, has not had contact with Delola for several years (Dkt. #250-4). Clarence Jr., Delola's nephew, lives in Jacksonville and is the primary caregiver for his disabled elderly mother, limiting his ability to care for Tracy (Dkt. #250-4). Tammy Jean, Delola's niece, lives in Memphis, Tennessee and is caregiver for her mother-in-law, making is unavailable to care for Tracy (Dkt. #250-4). Tony Eugene Campbell, Delola's nephew, is incarcerated after setting the Delola's home on fire in a violent incident (Dkt. #250-4).[9]

Second, Defendant offers a declaration by Tommy Lawrence to explain that Tracy lacks family members capable of caring for her needs (Dkt. #250-8). Tommy works as an engineering supervisor and supports clients in Asia and Europe, which requires him to frequently travel (Dkt. #250-8). Additionally, the declaration sets out that Tommy works in an office during the day and must be available in the evenings to accommodate clients in different time zones (Dkt. #250-8). Further, he cannot move closer to Tracy to assist with her care because his and his wife's employment (Dkt. #250-8). Further, the declaration describes his sister's inability to care for Tracy due to her drug use and imprisonment (Dkt. #250-8).

While Tommy's financial support for Delola demonstrates his desire to support Tracy, he has shown he is unable to provide the physical care she needs on a daily basis (Dkt. #250-8). Thus,

---

[9] The Fire Department and Sheriff's Reports describe this incident (Dkt. #250-7).

Defendant has shown that his sister lacks any other available caregivers capable of providing the individualized assistance Tracy requires. Therefore, the Court finds that Defendant is the only available caregiver for his incapacitated immediate family member. Thus, he has shown an "extraordinary and compelling" reason exists that justifies compassionate release under U.S.S.G. §§ 1B1.13(b)(3).

### B.    Rehabilitation

Rehabilitation alone cannot support a claim for sentence reduction but may properly be considered as a factor in evaluating "extraordinary and compelling reasons." *United States v. Centeno*, No. 4:14-CR-00081(10), 2021 WL 3604748, at *4 (E.D. Tex. Aug. 13, 2021) (citing *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020)). As discussed above, Defendant has shown that his family circumstances are an "extraordinary and compelling reason" that warrants release. *See supra* Section II.A. Thus, the Court can properly consider Defendant's rehabilitation efforts.

While incarcerated, Defendant has taken steps to improve himself. He has completed cognitive behavior therapy programming, as well as two vocational work programs: an HVAC program and a Department of Labor quality-control technician program (Dkt. #250 at pp. 11–12; Dkt. #250-13). Additionally, as reflected by Defendant's Recidivism Scoresheet, he has not had any incident reports while he has been in BOP custody (Dkt. #205-11). *See Centeno*, 2021 WL 3604748, at *4 (finding rehabilitation efforts supported compassionate release where the defendant had completed educational programs and lacked disciplinary infractions). Furthermore, he is rated as having a low risk of recidivism by the Department of Justice's Prisoner Assessment Tool Targeting Estimated Risk and Needs scoring system (Dkt. #250 at p. 11; Dkt. #250-11).

However, the most compelling display of Defendant's rehabilitation arises from an administrative kerfuffle during the completion of his incarceration in the Arkansas state prison

system and handover to the U.S. Marshals service. After Defendant completed his time for his state crimes, he was supposed to immediately begin the remainder of his sentence in Federal Court (Dkt. #250 at pp. 3–4). This did not happen. When Defendant was released from state prison, he was informed that he should return home because his sentence was completed (Dkt. #250 at pp. 3–4). Defendant inquired about his federal sentence but was told to return home (Dkt.#250 at pp. 3–4). He did so. For the next two years, Defendant lived at home and took care of Tracy and successfully ran a landscaping business (Dkt. #250 at p. 4). During this time, he committed no crimes and continued to interact with his parole officers (Dkt. #250 at pp. 3–4, 11). In short, during the two years between his state and federal incarcerations, he was a model citizen who ran a business and took care of his family (*See* Dkt. #250 at pp. 3–4, 11). What's more, when contacted by the U.S. Marshals service, he voluntarily surrendered the following day to begin his federal incarceration without protest (Dkt. #250 at p. 4). In short, during his inadvertent release for two years, Defendant showed that he had no intention of returning to his life of crime and instead exhibited that he had turned his life around. Accordingly, the Court finds that Defendant's rehabilitation also supports his motion for compassionate release.

### C.    Sentencing Credit Error

Defendant also argues that the unusual circumstances of his case involving sentencing calculation and administration errors caused hardship and are sufficient under U.S.S.G. § 1B1.13(b)(5) to constitute an "extraordinary and compelling" reason to warrant a sentence reduction. The "other reasons" category is a catchall that allows the defendant to "present any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. § 1B1.13(b)(1)–(4). *Id.* § 1B1.13(b)(5). Defendant argues that the BOP improperly calculated his sentence, that this error was eventually

corrected adding fifteen months to his sentence, and that this error presents an extraordinary and compelling reason to warrant compassionate release (Dkt. #250 at pp. 16–18). The Court disagrees. Defendant pursued this claim through the proper legal vehicle by filing a writ of habeas corpus to contest this error (*See* Dkt. #250-3). While the BOP's initial error caused unnecessary confusion, the Court finds no error in Defendant's sentencing in which to award relief.

Additionally, while the language of § 1B1.13(b)(5) does not preclude sentencing errors from being considered, courts are hesitant to consider sentencing errors as an "extraordinary and compelling" reason. *United States v. Jenkins*, 50 F.4th 1185 (D.C. Cir. 2022) ("Legal errors at sentencing are neither extraordinary nor compelling."); *see, e.g., United States v. McKinnie*, 24 F.4th 583 (6th Cir. 2022) (holding that a sentence imposed in the possibly erroneous belief that the defendant was a career offender does not create extraordinary and compelling reasons for a sentence reduction). Therefore, the court finds that this error does not constitute an "extraordinary and compelling" reason to warrant compassionate release.

## III.    The 18 U.S.C. § 3553(a) factors support Defendant's Motion for Reduction of Sentence.

Even when the Court finds that "extraordinary and compelling" reasons exist, it must also evaluate the sentencing factors under 18 U.S.C. § 3553(a) to determine if they outweigh granting compassionate release. Under § 3553(a)(2)(A), the Court must address the seriousness of the offense, the defendant's history and characteristics, the need to deter criminal conduct, the need to protect the public, respect for the law, and providing a just punishment. *United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *5 (N.D. Tex. July 10, 2023).

The § 3553(a) factors weigh in favor of granting Defendant's motion for compassionate release. The nature and circumstances of the offense and the history and characteristics of

Defendant clearly show that his offense was serious. Defendant pleaded guilty to Conspiracy to Possess with the Intent to Distribute and Distribution of 500 Grams or More of Methamphetamine, 5 Kilograms or More of Cocaine, and 1 Kilogram or More of Heroin, a violation of 21 U.S.C. § 841(b)(1)(A) (Dkt. #238 at p. 1). Moreover, his criminal history was a level IV due to his multiple convictions in the past (Dkt. #181). These factors, standing alone, weigh against release. Yet, the text of § 3553(a) does not make any factor, or combination of factors, dispositive. *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). In fact, Defendant's offense occurred more than ten years ago and since then has shown substantial rehabilitation through his continued education, life during incarceration, and, importantly, the two years he lived in society between his state and federal sentences. During those two years, Defendant lived with and provided for his family, started a business and worked a consistent job (Dkt. #250 at pp. 3–4, 11). Furthermore, he did not have any encounters with law enforcement until the U.S. Marshals contacted him (Dkt. #250 at pp. 3–4, 11). After receiving a call from the Marshals, Defendant voluntarily surrendered (*See* Dkt. #250 at p. 4).

The Court is also concerned with protecting the public. Here, Defendant is at a low risk of recidivism (Dkt. #250-8). *See supra* Section II.B. Defendant has not had any incidents in prison, has completed multiple programs and has consistently engaged in his work program (Dkt. #250-8). Thus, Defendant's post sentencing conduct sheds light on the likelihood that he will not engage in future criminal conduct. *See Pepper v. United States*, 562 U.S. 476, 492 (2011).

As part of the sentencing factors, the Court considers the need to deter criminal conduct, that the sentence imposed shows a respect for the law, and provides a just punishment for the crime.

22

Here, Defendant has served 71.8% of his projected sentence.[10] He has served a considerable sentence, one that reflects the seriousness his offense, promotes respect for the law, and provides just punishment for his actions. *See United States v. Tillman*, No. 14-41, 2021 WL 602817, at *4 (E.D. La. Feb. 16, 2021) (finding that a defendant serving 65% of his sentence was consistent with the sentencing guidelines when granting compassionate release). Defendant has spent years in prison for his role in the conspiracy and has presented evidence that he has accepted responsibility for his actions and has sought to improve himself during his time incarcerated (*See* Dkt. 250). Moreover, granting compassionate release in this case will only result in a relatively minor departure from Defendant's original sentence. In granting compassionate release, the Court finds that concerns regarding sentence disparities among similarly situated defendants is minimal.

After considering the 18 U.S.C. § 3553(a) factors, the Court finds that the factors do not outweigh Defendant's motion for compassionate release. The facts of Defendant's incarceration are unique, as has been discussed. His family circumstances meet the type of circumstances contemplated under U.S.S.G. § 1B1.13, which are only amplified by his demonstrated rehabilitation. Accordingly, the Court finds that it should grant his Motion.

## CONCLUSION

It is therefore **ORDERED** that Defendant Jack Shaw's Renewed Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. #250) is hereby **GRANTED**. His sentence is reduced to time served, with supervised release for 5 years to follow on terms previously imposed. An Amended Judgment will be entered separately. This sentence will be stayed for fourteen days

---

[10] According to the *Sentence Monitoring Computation Data as of 08-19-24* (Dkt. #250-10), Defendant began his sentence August 07, 2019, and his Projected Satisfaction Date is December 27, 2027. Therefore, as of August 15, 2025, Defendant has served 71.8% of his projected sentence.

to provide the Bureau of Prisons and the United States Probation Office time to implement the amended sentence.

It is Further **ORDERED** that Defendant's Motion to Seal Exhibit 4, Attachments 1 and 2 (Dkt. #250-5; Dkt. #250-6) Filed with Renewed Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. #249) is hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED this 29th day of August, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE